# NO. 12-13-00253-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSEPH EDWARD SULLIVAN,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Joseph Edward Sullivan appeals his conviction for continuous sexual abuse of a child under fourteen, for which he was sentenced to imprisonment for life. In one issue, Appellant argues that the trial court erred in admitting irrelevant and unduly prejudicial photographic evidence offered by the State during the guilt-innocence phase of trial. We affirm.

### BACKGROUND

Appellant was charged by indictment with continuous sexual abuse of his girlfriend's young daughter, K.J. Appellant pleaded "not guilty." The matter proceeded to a jury trial.

At trial, K.J. testified regarding multiple instances of Appellant's sexually abusing her.[1] Moreover, a video recording of her interview with Jackie Mendez, a forensic examiner with the Child Advocacy Center in Tyler, Texas, was played for the jury. Additionally, the State elicited testimony from multiple forensic scientists concerning the biological samples collected from K.J. by the sexual assault nurse examiner. Each testified that no DNA linking Appellant to the crime was present in the samples collected. The State further sought to introduce, over Appellant's objection, nine pictures recovered from Appellant's laptop depicting young girls. The trial court

---

[1] Appellant has not raised an issue challenging the sufficiency of the evidence.

overruled Appellant's objection and permitted the State to publish the pictures to the jury. Thereafter, the State rested. Appellant rested without calling any witnesses.

Ultimately, the jury found Appellant "guilty" as charged. Following a bench trial on punishment, the trial court sentenced Appellant to imprisonment for life. This appeal followed.

## ADMISSIBILITY OF EVIDENCE - RELEVANCE AND UNDUE PREJUDICE

In his sole issue, Appellant argues that the trial court abused its discretion in admitting nine photographs seized from Appellant's laptop. Specifically, Appellant argues the admission of this evidence violates Texas Rules of Evidence 401, 402, and 403.

### Standard of Review and Governing Law

We review the trial court's decision to admit evidence for abuse of discretion. *See Prystash v. State,* 3 S.W.3d 522, 527 (Tex. Crim. App. 1999); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). "That is to say, as long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not intercede." *Montgomery*, 810 S.W.2d at 391. Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed, even if the trial judge gave the wrong reason for a correct ruling. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence that is not relevant is inadmissible. *See* TEX. R. EVID. 402. With respect to the relevance of photographic evidence, the court of criminal appeals further instructs as follows:

> A photograph should add something that is relevant, legitimate, and logical to the testimony that accompanies it and that assists the jury in its decision-making duties. Sometimes this will, incidentally, include elements that are emotional and prejudicial. Our case law is clear on this point: If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects.

*Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004).

Under Rule 403 of the Texas Rules of Evidence, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice

. . . ." TEX. R. EVID. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery*, 810 S.W.2d at 389. Rule 403 requires both trial and reviewing courts to analyze and balance (1) the probative value of the evidence (2) the potential to impress the jury in some irrational, yet indelible, way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *See Erazo*, 114 S.W.3d at 489. In making this determination, we consider factors including (1) the number of exhibits offered, (2) their gruesomeness, (3) their detail, (4) their size, (5) whether they are black and white or color, (6) whether they are close up shots, (7) whether the body is naked or clothed, (8) the availability of other means of proof, and (9) other circumstances unique to the individual case. *Santellan v. State*, 939 S.W.2d 155, 172 (Tex. Crim. App. 1997).

Moreover, under Rule 404(b), evidence of other crimes, wrongs, or bad acts is inadmissible if it is offered to prove the character of a person in order to show action in conformity therewith. *See* TEX. R. EVID. 404(b). But it may be admissible for other purposes, such as proof of motive, opportunity, intent, absence of mistake or accident, or to rebut a defensive theory. *Id.*; *Sarabia v. State*, 227 S.W.3d 320, 322 (Tex. App.–Fort Worth 2007, pet. ref'd).

## The Photographs and K.J.'s Trial Testimony

In the instant case, the State sought to admit nine of approximately two thousand photographs recovered from Appellant's laptop. Each of these pictures depicts one or more young girls. In five of the pictures, the girls are nude or partially nude. In three of the remaining four pictures, the girls depicted are wearing only undergarments, and in the fourth picture, the girl is wearing an ill-fitting and revealing bathing suit. Appellant objected to the admissibility of these photographs, arguing that they were not relevant and were "more prejudicial than probative." The trial court overruled Appellant's objections.

Earlier in the trial, K.J., who was twelve years old at that time, testified that when she was nine years old, Appellant sexually abused her on multiple occasions. Specifically, she stated that Appellant would put his hand on her genitals under her underwear and, subsequently, would put his finger in her vagina. K.J. specified that this happened approximately twenty-five times, usually on a weekly basis. K.J. also described another incident when Appellant placed an object she described as "hard and rubbery [feeling], like a [hard] bottle nipple . . . close to [her]

bottom." K.J. elaborated, stating that her back was toward Appellant, who was rubbing this object on her bottom and who once put the object in her bottom, while he breathed heavily and rubbed her stomach under her shirt with his hands.

On cross examination, K.J. testified that she told Mendez that she "gets really mad sometimes." She further testified that she did not like having to sleep in the dining room and was mad because Appellant's son had his own room. K.J. further recounted an incident with a boy at her school, whom she accused of touching her bottom. Based on K.J.'s testimony about feeling something similar to a bottle nipple on her bottom, the State questioned her about her familiarity with condoms and whether she had seen one in her mother and Appellant's bathroom on one occasion. The State further questioned K.J. about whether Appellant's son had, on numerous occasions, jokingly pretended to "drop a condom" in front of her.

On redirect examination, K.J. stated that she had not fabricated her allegations against Appellant for the purpose of creating an opportunity to have her own bedroom.

During his closing argument, Appellant began by stating, "The bottom line in this case is the credibility of the witnesses, primarily, [K.J.]. She was the only witness that means anything in the case." Appellant then proceeded to point out inconsistencies in K.J.'s testimony and suggest to the jury that she fabricated the story because, among other reasons, she was mad about having to sleep in the dining room. Appellant elaborated, suggesting that K.J. observed the consequences that befell the boy at her school after she reported to the teacher that he had touched her rear end. Appellant proffered that, as a result, K.J. believed she could gain some sort of advantage by placing Appellant in a similar predicament by telling her teacher that he had touched her inappropriately. Appellant further emphasized to the jury that the State had admitted having no physical evidence and, ultimately, asked the jury to conclude that there was reasonable doubt that Appellant did what K.J. said he did.

**Relevance**

The photographs admitted in the instant case share a common theme—lascivious depictions of young girls.[2] The indictment alleged that Appellant committed the offense of continuous sexual abuse by, among other ways, intentionally or knowingly engaging in sexual

---

[2] Among these pictures was a photograph of a prelude to a sexual encounter between a girl and an older nude male with an erect penis. Another photograph depicts two girls. One is on her knees, leaning forward on her elbows, and facing away from the camera, while the other girl is kneeling, facing the camera, and has both of her hands placed on the first girl's genitals.

4

contact with K.J. by touching her genitals with the intent to arouse or gratify his sexual desire.[3] K.J. testified that Appellant put his hand in her pants underneath her underwear on numerous occasions. The photographs, which were recovered from Appellant's computer, tended to prove that Appellant was aroused by lascivious depictions of young girls. This tends to support the conclusion that Appellant, on numerous occasions, engaged in the aforementioned sexual contact with the intent to arouse or gratify a similar sexual desire. *See, e.g.*, **_Pallm v. State_**, No. 12-10-00329-CR, 2011 WL 6043025, at \*2 (Tex. App.–Tyler Nov. 30, 2011, pet. ref'd) (mem. op., not designated for publication). They further served to bolster K.J.'s testimony, the veracity of which Appellant attacked. **_Id._**

## Weighing Probative Value Against Danger of Unfair Prejudice

We next consider whether the probative value of these photographs is substantially outweighed by the danger of unfair prejudice to Appellant.

Applying the Rule 403 balancing factors to this case, we first consider how compellingly the photographs served to make a fact of consequence more or less probable. *Sarabia*, 227 S.W.3d at 324. As set forth previously, this photographic evidence was necessary to prove the requisite intent element under Sections 21.02 and 21.11. Moreover, at trial, Appellant fervently challenged K.J.'s credibility. Because there were no other eyewitnesses and no biological evidence linking Appellant to the crime, the evidence in question was particularly important to the State's need to rebut Appellant's well-structured attack on its key witness. Appellant declined to call any witnesses. Thus, his attack on K.J.'s credibility was a critical component to his defense. As a result, it was keenly important that the State seek to bolster K.J.'s testimony. Because K.J. admitted that she was mad about having to sleep in the dining room and that she accused a boy at her school of making unwanted contact with her rear end, the jury could have reasonably concluded that she fabricated her allegations to gain some sort of advantage by getting Appellant into trouble. These photographs possessed by Appellant contemporaneously with the events in question tended to show that K.J.'s testimony was truthful since it

---

[3] *See* TEX. PENAL CODE ANN. § 21.02(c)(2) (West Supp. 2014) ("act of sexual abuse" includes indecency with a child under Section 21.11(a)(1), if actor committed offense in a manner other than by touching breast of child); *id.* § 21.11(a) (West 2011) (person commits indecency with child if, with a child younger than seventeen years of age, person engages in sexual contact with child); *see also id.* § 21.01(2) (West 2011) (under Section 21.11, "sexual contact" includes touching by person of any part of child's genitals and requires act be committed with intent to arouse or gratify sexual desire of actor).

demonstrated that Appellant received sexual gratification from viewing these photographs. *See, e.g., Pallm*, 2011 WL 6043025, at *2. We conclude that the probative value of the photographic evidence is high and the State's need for the evidence was significant.

As for the exhibits, they are nine color images apparently downloaded from the internet. Eight of the nine photographs are 4″ x 6,″ while the remaining photograph is 3 1/2″ x 5.″ None of the pictures are particularly sharp in detail. Most of the photographs could be described as blurry to moderately pixilated. Finally, one photograph appears to have been taken with some sort of night vision filter, and its subject is barely discernible.

But despite the poor quality of the photographs, we cannot discount the possibility that they may have potentially impressed the jury in some irrational way. And while the notion of a person receiving any sort of gratification from these sorts of pictures is repugnant, its potential to irrationally impress the jury in the instant case was diminished given the totality of the evidence before the jury. *See, e.g., Gomez v. State*, No. 12-13-00050-CR, 2015 WL 303095, at *4 (Tex. App.–Tyler 2015, no pet. h.) (not yet released for publication); *Pallm*, 2011 WL 6043025, at *3. Indeed, Appellant's possession of this pornographic material was likely to be construed as less heinous by the jury than the detailed evidence it heard concerning Appellant's repeatedly rubbing nine-year-old K.J.'s genitals, inserting his finger into her vagina, and penetrating her anus with a foreign object. *Cf. Gomez*, 2015 WL 303095, at *4; *Pallm*, 2011 WL 6043025, at *3.

Moreover, the State did not spend an excessive amount of time developing this evidence. All argument concerning the admissibility of these photographs was conducted outside of the jury's presence. The State proved up the photographs with only three questions. Once the photographs were offered into evidence and published to the jury, the State concluded its examination and rested. Further still, while the State made references to these photographs in its jury argument, it did so while drawing a clear line to the intent element. Specifically, the prosecuting attorney argued to the jury as follows:

> One of the other elements we have to prove is that the defendant acted with intent to arouse or gratify his sexual desires. I think his acts speak for themselves, but I also think other items do. I didn't like looking at these [photographs]. I had to look at them for trial. You didn't want to look at them. But you had to look at them because you're the jury in this case. Do you think anybody else in this room likes looking at them? That man right there. Ladies and gentlemen, we have proved our case beyond a reasonable doubt. I ask you today to fight for her, to right a wrong in her life with a guilty.

6

In response, Appellant's attorney also made several references to the photographs, explaining to the jurors that the purpose of the State's offering the photographs was to "get a reaction out of" them and cause them to not care about the evidence, or lack thereof. Appellant further reminded the jury that it was not obligated to convict Appellant based on his possessing these photographs.

Having considered and balanced the aforementioned factors, we conclude that each factor weighs in favor of the trial court's finding that the probative value of the photographs is not substantially outweighed by the danger of unfair prejudice. Therefore, we hold that the trial court did not abuse its discretion in admitting these photographs. Appellant's sole issue is overruled.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered February 11, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 11, 2015**

**NO. 12-13-00253-CR**

**JOSEPH EDWARD SULLIVAN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 007-1018-12)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*